# UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## WESTERN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | **CHAPTER 11** |
| | ) | |
| **ROCKFORD PACKAGING SYSTEMS, INC.** | ) | **Case No. 08-71195** |
| **an Illinois corporation, d/b/a ROCKFORD** | ) | |
| **MIDLAND CORPORATION,** | ) | |
| | ) | **Judge Manuel Barbosa** |
| Debtor. | ) | |

## NOTICE OF FINAL HEARING UPON EMERGENCY MOTION FOR AN ORDER GRANTING AUTHORITY TO USE CASH COLLATERAL AND AN ORDER (I) AUTHORIZING USE OF CERTAIN CASH COLLATERAL AND (II) GRANTING REPLACEMENT LIENS TO AMCORE BANK

TO:     See attached service list.

On April 23, 2008 an Interim Order (I) Authorizing Use of Certain Cash Collateral and (II) Granting Replacement Liens to Amcore Bank ("Interim Order") was entered by the United States Bankruptcy Court pursuant to an Emergency Motion for Order Granting Authority to Use Cash Collateral ("Motion") in the above referenced bankruptcy proceeding, photocopies of which Motion and Interim Order are attached hereto. A hearing to consider the entry of a Final Order (I) Authorizing Use of Certain Cash Collateral and (II) Granting Replacement Liens to Amcore Bank will occur before the United States Bankruptcy Court on May 28, 2008 at 11:00 a.m.

**Your rights may be affected.** You should read these papers carefully and discuss them with your attorney, if you have one in this bankruptcy case. (If you do not have an attorney, you may wish to consult one.)

If you do not want the Court to grant the Motion and enter a Final Order (I) Authorizing Use of Certain Cash Collateral and (II) Granting Replacement Liens to Amcore Bank you or your attorney must:

1.      File a written Objection to the Final Order (I) Authorizing Use of Certain Cash Collateral and (II) Granting Replacement Liens to Amcore Bank with the United States Bankruptcy Court and serve a copy of the written Objection upon counsel for Rockford Packaging Systems, Inc., d/b/a Rockford Midland Corporation, Debtor, Amcore Bank and the Office of the United States Trustee on or before May 26, 2008 at:

Clerk of Court
United States Bankruptcy Court
211 South Court Street
Rockford, IL 61104

Attorney Bradley T. Koch
Counsel for Rockford Packaging Systems, Inc.
Holmstrom & Kennedy, P.C.
P.O. Box 589
Rockford, IL 61105-0589

Attorney Kurt Carlson
Counsel for Amcore Bank, N.A.
Tishler & Wald, Ltd.
200 S. Wacker Dr.
Suite 3000
Chicago, IL 60606

Attorney Sheree Dandurand
United States Trustee
United States Trustees' Office
780 Regent Street, Suite 304
Madison, WI 53715

AND

2.      Attend the hearing scheduled to be held on **May 28, 2008 at 11:00 a.m.** at the United States Bankruptcy Court, 211 South Court Street, Rockford, Illinois 61104.

If you mail your written Objection to the Court for filing and to counsel for Rockford Packaging Systems, Inc., d/b/a Rockford Midland Corporation, Amcore Bank and the office of the United States Trustee, you must mail it early enough so that the Court and counsel will receive it on or before May 26, 2008.

2

If you or your attorney do not take these steps, the Court may decide that you do not oppose the entry of a Final Order (I) Authorizing Use of Certain Cash Collateral and (II) Granting Replacement Liens to Amcore Bank and may enter an Order granting that relief.

Dated: _May 6, 2008_

ROCKFORD PACKAGING SYSTEMS, INC., an Illinois corporation, d/b/a ROCKFORD MIDLAND CORPORATION, Debtor,

BY:   HOLMSTROM & KENNEDY, P.C.
      Its Attorneys,

BY:   _____
      One of Their Attorneys

KIM M. CASEY - #6181726
BRADLEY T. KOCH - #3122997
Holmstrom & Kennedy, P.C.
800 N. Church St., P.O. Box 589
Rockford, IL 61105
(815) 962-7071

3

## PROOF OF SERVICE

The undersigned, being first duly sworn, states that a copy of the foregoing Notice of Final Hearing Upon Emergency Motion for an Order Granting Authority to Use Cash Collateral and An Order (I) Authorizing Use of Certain Cash Collateral and (II) Granting Replacement Liens to Amcore Bank was served upon the persons listed below, upon the persons listed below, by enclosing the same in an envelope addressed to such person at his address as disclosed by the pleadings of record herein, and by depositing said envelope, with postage fully prepaid, in the United States Post Office mailbox in Rockford, Illinois, on the 6th day of May, 2008:

A-American Machine & Assc.
2620 Auburn Street
Rockford, IL 61101

All Control
1644 Cambridge Drive
Elgin, IL 60123

Amcore Bank
c/o Attorney Kurt M. Carlson
Tishler & Wald, Ltd.
200 S. Wacker Drive, Suite 3000
Chicago, IL 60606

American Hammer
5409 Swanson Court
Roscoe, IL 61073

B&T Sales, Inc.
c/o Attorney Kenneth D. Peters
Dressler & Peters, LLC
111 W. Washington, Suite 1900
Chicago, IL 60602

Bank of America
Business Card
PO Box 15710
Wilmington, DE 19886

Blue Cross and Blue Shield
PO Box 1186
Chicago, IL 60690

Catching Fluidpower
3643 Eagle Way
Chicago, IL 60678-1036

Certified Technology, Inc.
915 22nd Street
Rockford, IL 61108

Cintas Corporation #355
5100 26th Ave.
Rockford, IL 61109

Color Communications
c/o Attorney Marc Samotny, Ltd.
Patzik, Frank & Samotny Ltd.
150 South Wacker Drive
Suite 1500
Chicago, IL 60606

Controls for Motion Automatic
3265 Gateway Road
Suite 300
Brookfield, WI 53045

Country Oven Bakery
PO Box 465662
Cincinnati, OH 45246

Creative Precision, Inc.
5275 Irving Blvd., Unit D
Machesney Park, IL 61115

CRV Landcaster, Inc.
777 Maple Lane
Bensenville, IL 60106

Dairy Conveyor Corp.
PO Box 411
Brewster, NY 10509

Dell Business Credit
Payment Processing Center
PO Box 5275
Carol Stream, IL 60197

DoAll Rockford
4436 Paysphere Circle
Chicago, IL 60674

4

Douglas Machine
NW8957
PO Box 1450
Minneapolis, MN 55485

Earl M. Jorgenson Co.
1900 Mitchell Blvd.
Schaumburg, IL 60193

Elkhart Products Corporation
1255 Oak Street
PO Box 1008
Elkhart, Indiana 46515

Englewood Electric Supply
PO Box 802578
Chicago, IL 60680

Fastenal Company
PO Box 978
Winona, MN 55978

Federal Express
PO. Box 94515
Palatine, IL 60094

Ferrellgas
PO Box 173940
Denver, CO 80217

Fire & Safety
PO Box 5646
2420 Harrison Ave.
Rockford, IL 61125-0646

Flodyne
1000 Muirfield Drive
Hanover Park, IL 60103

Fox Valley Auto Paints, Inc.
198 Hankes Avenue
Aurora, IL 60505

Goodman Packaging Equipment
1081 Northpont Blvd
Waukegan, IL 60085

Hiwin Corporation
3298 Paysphere Circle
Chicago, IL 60674

Horizons, Inc.
PO Box 118
Roscoe, IL 61073

HPM, Inc.
2809 Stone Mill Way
Hamilton, OH 45011

Image Signs
7323 N. Alpine Road
Loves Park, IL 61111

Internal Revenue Service
Centralized Insolvency Operations
PO Box 21126
Philadelphia, PA 19114

Internal Revenue Service
District Director
230 S. Dearborn St.
Suite 3030A
Chicago, IL 60604

J&L Industrial Supply
1028 Solution Center
Chicago, IL 60677

Jay-Tronics, Inc.
124 North Rockton Ave.
Rockford, IL 61103

Jerome Sheet Metal
14383 Fullmar Drive
South Beloit, IL 61080

K&M Tooling
1830 9th Street
Rockford, IL 61104

Kaman Industrial Tech.
PO Box 74566
Chicago, IL 60690

KTG USA
400 Mahannah
Memphis, TN 38107

Kiser Controls
Department 20-KIS 001
PO Box 5940
Carol Stream, IL 60197

Kornylak
400 Heaton Street
Hamilton, OH 45011

Landmark Printing
327 South Winnebago Street
P.O. Box 469
Rockford, IL 61105

Matrix Business Technologies
PO Box 742501
Cincinnati, OH 45274

McMaster-Carr
PO Box 7690
Chicago, IL 60680

Metrex Research
1717 W. Collins Ave.
PO Box 14247
Orange, CA 92863

Mid City Stationers
PO Box 957
Rockford, IL 61105

MSC Industrial Supply
9934 N. Alpine Road
Machesney Park, IL 61115

National Guardian
PO Box 1191
Madison, WI 53701

NICOR Gas
PO Box 416
Aurora, IL 60505

Nordson Corporation
PO Box 802586
Chicago, IL 60680

O&L Machine Company
1115 18th Ave.
Rockford, IL 61104

Packaging Mchy. Mfgs. Inst.
4350 No. Fairfax Drive
Suite 600
Arlington, VA 22203

Pitney Bowes Credit Corp.
PO Box 856390
Louisville, KY 40285

Pneumatic Cylinders & Couplers, Inc.
1214 Shappert Drive
Machesney Park, IL 61115

Pryor Systems, Inc.
12460 Crabapple Road, Suite 20:
Alpharetta GA  30004

Purchase Power
PO Box 856042
Louisville, KY 40285

Radio Shack
PO Box 848549
Dallas, TX 75284-8549

Robert Ferrell & Associates
1639 North Alpine Road
Garden Suite
Rockford, IL 61107

Rock River Disposal
PO Box 673045
Milwaukee, WI 53267

Rock River Internet
202 West State Street
8th Floor
Rockford, IL 61101

Rock River Water Reclamation
PO Box 6207
Rockford, IL 61125-1207

Rockford Central Plastics
6715 West State Street
Rockford, IL 61103

Rockford Industrial Welding
PO Box 5404
Rockford, IL 61125

Rockford Information Tech.
419 North Mulford Road
Rockford, IL 61107

RR Floody Co
5065 27th Ave
Rockford, IL 61109

SJ Carlson
4544 Shepherd Trail
Rockford, IL 61103

Slabaugh Services
6204 Argyle Road
Caledonia, IL 61011

Smith Gilliam Williams Miles
PO Box 1098
Gainesville, GA 30503

Smith Industrial Rubber Co.
PO Box 5486
Rockford, IL 61125

Steiner Electric Company
1275 Touhy Ave.
Elk Grove Village, IL 60007

Target Laser & Machining
2433 Fremont Street
Rockford, IL 61103

TBDN
PO Box 1887
1410 US Hwy 70 Bypass
Jackson, TN 38302-1887

Thor Computing, Inc.
2551 Springdale Drive
Rockford, IL 61114

Twin City Supply, Inc.
PO Box 6011
Rockford, IL 61125

UBU Enterprises
405 Lobolly Bay Drive
Santa Rosa Beach, FL 32459

United Parcel Service
Lock Box 577
Carol Stream, IL 60132

Valco Cincinnati
411 Circle Freeway Drive
Cincinnati, OH 45346

Video Jet
c/o Attorney Shawn C. Fulbright
Attorney Thomas R. Jakeway
PO Box 1510
Rockford, IL 61110-0010

Wayne Farms
c/o Mr. Joseph Cooley, III
Hulsey, Oliver & Mahar, LLP
P.O. Box 1457
Gainesville, GA 30503

White Design
PO Box 209
209 East State Street
Cherry Valley, IL 61016

Williams Manny, Inc.
555 S. Perryville Road
Rockford, IL 61125

Worksite Solutions
5277 Payshere Circle
Chicago, IL 60674

WW Grainger Co.
Dept. 809248511
Palatine, IL 60038

Wyeth Pharmaceuticals
1025 Marcel Laurin
St. Laurent, Quebec H4R 1J6

Zee Medical Supplies
PO Box 781494
Indianapolis, IN 46278

Internal Revenue Service
c/o Joel Nathan
Assistant U.S. Attorney
219 S. Dearborn, Suite 500
Chicago, IL 60604

Attorney Carol J. Ryczek
US Trustees' Office
780 Regent Street, Suite 304
Madison, WI 53715

Euclid Managers
234 Spring Lake Drive
Itasca, IL 60143

7

Personal Care Insurance
PO Box 6470
Carol Stream, IL 60197-6470

Theodore D. Jaeger
Marilan Jaeger
4401 Tullocks Woods Trail
Rockford, IL 61111

*Katie Norris*

Subscribed and sworn to before me
this _4th_ day of May, 2008.

*Kristine A. Butterfield*
Notary Public

> **"OFFICIAL SEAL"**
> **KRISTINE A. BUTTERFIELD**
> Notary Public, State of Illinois
> My Commission Expires  03/29/11

KIM M. CASEY - #6181726
BRADLEY T. KOCH - #3122997
Holmstrom & Kennedy, P.C.
800 N. Church St.
P.O. Box 589
Rockford, IL 61105
(815) 962-7071

# UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### WESTERN DIVISION

IN RE: ROCKFORD PACKAGING     )
SYSTEMS, INC.     )
       )
    Debtor.    )     No.08- 71195
       )
       )     Hon. Manuel Barbosa

## INTERIM ORDER (I) AUTHORIZING USE OF CERTAIN CASH COLLATERAL AND (II) GRANTING REPLACEMENT LIENS TO AMCORE BANK

This matter is before the Court on the Debtor's Emergency Motion for Order Granting Authority to Use Cash Collateral (the "Motion"), filed by the Debtor, Rockford Packaging, Inc (the "Debtor") on April 23, 2008. Notice of the Motion has been given by the Debtor to the United States Trustee, Amcore Bank (the "Bank"), and the twenty largest unsecured creditors of the Debtor. The Court, having conducted a hearing on and considering the Motion, and being duly advised, now finds the following:

### Notice and Hearing

1.    Adequate and sufficient notice of the Motion has been given in accordance with Rules 2002 and 4001 (d) of the Federal Rules of Bankruptcy Procedure, which notice is sufficient for all purposes under the Bankruptcy Code and the applicable Federal Rules of Bankruptcy Procedure in respect to the relief requested in the Motion.

2.    On April 23, 2008, the Court conducted the Interim Hearing at which counsel for the Debtor, counsel for the Bank, and counsel for the U.S. Trustee were present. At the Interim Hearing, the represented parties informed the Court that an agreement concerning the Debtor's interim use of cash collateral through and including May 30, 2008 had been reached, the terms of which are incorporated in this Interim Order.

1

3.     No official creditors committee, as provided for under Section 1102 of the Bankruptcy Code, has been appointed as of the date hereof.

### Background

4.     The Debtor filed its voluntary Chapter 11 petition on April 18, 2008 (the "Petition Date"), and is operating its business and managing its property as the debtor in-possession under 11 U.S.C. §§ 11 07(a) and 1108. No trustee or examiner has been appointed in this Chapter 11 case.

5.     As of the Petition Date, the Bank has asserted its first priority secured claim against the Debtor in the principal amount of not less than $773,180.61 (the "Pre-Petition Obligations"), by virtue of, among other things, a Promissory Note, dated February 21, 2003, by and between the Debtor and the Bank in the original principal amount of $380,000.00, loan number 45517-000-99; Promissory Note, dated May 5, 2005, by and between the Debtor and the Bank, in the original principal amount of $500,000.00, loan number 8205894; a Security Agreement from the Debtor to the Bank, dated January 7, 2003, securing all present and future debts of the Debtor to the Bank perfecting the Bank's security interest in all accounts and other rights to payment, inventory, instruments, chattel paper, general intangibles, documents, and deposit accounts of the Debtor (all of which are hereinafter referred to as the "Loan Documents").

6.     The Bank has asserted that the Pre-Petition Obligations are secured by duly perfected first priority security interests and liens (the "Pre-Petition Liens") in substantially all of the Debtor's business assets, with priority over all liens, claims, and interests of all other persons and entities including the Debtor (the "Pre-Petition Collateral"); that the Pre-Petition Obligations constitute allowable claims under Sections 502 and 506 of the Bankruptcy Code; and the Pre-

2

Petition Obligations are due and payable without defense, setoff, or counterclaim.

7.      The proceeds of certain of the Pre-Petition Collateral constitute cash collateral as defined in Section 363(a) of the Bankruptcy Code (the "Cash Collateral"). As of the Petition Date, the Debtor had cash in the approximate sum of $1,500.00; accounts receivable the Debtor asserts in the approximate sum of $108,114.00, though the Bank asserts the approximate sum of $77,000.00; furniture, fixtures, and  equipment in the approximate sum of  $84,000.00; and inventory work in process that the Debtor asserts could gross as much as $811,642.00, though the Bank does not agree with that figure and shall not be binding upon the Bank, all of which constitute Cash Collateral within the meaning of 11 U.S.C. §363(c)(2).

### The Motion

8.      In the Motion, the Debtor seeks authorization to use Cash Collateral. The Debtor asserts that it requires the use of Cash Collateral in order to continue to operate its business. Without the use of Cash Collateral, the Debtor's estate will suffer irreparable harm in that the value of the Debtor's assets will diminish, and the Debtor will not be able to preserve the value of its assets. Accordingly, the Debtor has requested that the Bank allow them continued use of Cash Collateral in the operation of its business.

9.      The Debtor lacks unencumbered assets to operate its business post- petition.

10.     The Debtor has prepared a weekly cash flow projection attached as Exhibit "A" (the "Budget") which shows the Debtor's anticipated use of cash collateral from the week beginning April 21, 2008 through the week ending May 2, 2008.

11.     The Bank is willing to allow the Debtor to use Cash Collateral, subject to the agreed terms, conditions, and limitations set forth in this Interim Order. It is in the best interest of the Debtor, the Debtor's estate, and its creditors for the Debtor to be allowed to use Cash Collateral of the Bank on the conditions set forth herein.

3

12.   The covenants and agreements contained in the Loan Documents shall remain valid and enforceable and are incorporated herein by reference, except to the extent that they are inconsistent with the terms of this Interim Order, in which event the terms of this Interim Order shall control.

NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED as follows:

A.   Subject to compliance with the conditions of this Interim Order, the Debtor is hereby authorized to use the Pre-Petition Collateral, including the Cash Collateral, in conformity with the Budget. The Debtor shall be authorized to expend funds on those categories and for amounts not to exceed a fifteen percent (15%) variance from those identified in the Budget without further order of the Court; provided, however, that if the Bank, in its sole discretion, approves in writing any additional expenditure not included in the Budget, the Debtor may use the Cash Collateral in accordance therewith without further order of the Court.

B.   In order to provide the Bank with adequate protection with respect to any decrease in the value of its interest in the Pre-Petition Collateral resulting from imposition of the automatic stay under Section 362 of the Bankruptcy Code or the use of such property, including Cash Collateral by the Debtor (such decrease in value being referred to as the "Adequate Protection Claim"), and to secure the Adequate Protection Claim, if and only to the extent it has a valid pre-petition lien on the Cash Collateral, the Bank is granted a security interest and lien (the "Replacement Lien") upon all of the Debtor's post-petition property and assets of any kind and nature and the proceeds thereof, of the same nature and to the same extent and in the same priority that the Bank had security interests in the pre-petition property of the Debtor as of the Petition Date, which Replacement Lien is in addition to the Pre-Petition Liens (the Pre-Petition Collateral and the collateral for the Replacement Lien described above is hereafter collectively

4

referred to as the "Collateral"). The Replacement Lien is granted nunc pro tunc to the Petition Date.

    C.    Except as expressly set forth in this Interim Order, the liens and security interests granted to the Bank in this Interim Order shall not be subordinated to or paid pro rata with any other lien under § 364(d) of the Bankruptcy Code or otherwise.

    D.    In the event that the protections provided by the liens, security interests and encumbrances herein created in favor of the Bank by any means turn out, in retrospect, to have been inadequate, the Bank is granted an administrative super-priority claim, pursuant to 11 U.S.C. §507(b), superior to all administrative expenses to satisfy its post-petition claim, subject to (i) post-petition employee wages and salaries as set forth in the Budget, (ii) the compensation and expenses for counsel for the Debtor as provided in the Budget up to a maximum of $25,000 (inclusive of retainers already paid), and allowed by Bankruptcy Court order, and (iii) U.S. Trustee fees.

    E.    The rights and obligations of the Debtor and the rights, claims, security interests, liens and priorities of the Bank arising under this Interim Order and the Post-Petition Financing Documents (as hereinafter defined), if any, are in addition to, and not in lieu or substitution of, the rights, obligations, claims, security interests, liens and priorities existing as of the Petition Date.

    F.    The Debtor shall execute such notes, security agreements, and other documents as the Bank may request, to effectuate this Interim Order, or to evidence, confirm, validate or perfect the liens, security interests, debts and obligations granted pursuant to this Interim Order (Any and all such documents, along with any post-petition financing statements filed by the Bank, are hereafter referred to, collectively, as the "Post-Petition Financing Documents"). Nevertheless, the entry of this Interim Order shall operate to evidence the Debtor's indebtedness

to the Bank and perfect the Bank's security interests granted herein without the Bank's further act. If the Bank chooses to file financing statements or other documents or otherwise confirm perfection of its security interests granted herein, all such financing statements or other documents shall be deemed to have been filed or recorded as of the Petition Date. For purposes of this paragraph only, the automatic stay of § 362 of the Bankruptcy Code is hereby modified, vacated and lifted as against the Bank.

G.   In order to provide the Bank with interim adequate protection, the Debtor shall pay the Bank, no later than May 5, 2008, the sum of $8,000.00. Any and all payments or proceeds remitted, or deemed to be remitted, to the Bank pursuant to the provisions of this Interim Order shall be received, or deemed received, by the Bank for the benefit of the Bank free and clear of any claim, charge, assessment or other liability including, without limitation, any claim or charge arising out of or based on Sections 506(c) or 552(b) of the Bankruptcy Code, whether directly or indirectly, all of which are hereby waived by the Debtor.

H.   Consistent with the Loan Documents and in consideration of the Bank's consent to the Debtor's use of Cash Collateral, the Debtor shall timely pay or reimburse the Bank for all costs and expenses (including, without limitation, all filing and recording fees and reasonable attorneys' and paralegal fees and expenses) as and when incurred by the Bank before or after the Petition Date: (i) in connection with the filing of the bankruptcy, the Motion, the Interim Order, and related instruments, documents and agreements including the perfection of the Bank's security interests; (ii) in the representation of the Bank in the Debtor's bankruptcy case including but not limited to those services and expenses incurred in connection with any adversary proceeding, contested matter, discovery, sale(s) of assets, plan of reorganization, or otherwise; (iii) in the monitoring of all loans by the Bank to the Debtor; (iv) in enforcing the Bank's rights and remedies with respect to the Collateral; and (v) in paying any cost or expense for which the Debtor would otherwise be obligated to the Bank under the Loan Documents ("Bank Expenses").

6

The Bank may debit any bank account of the Debtor with the Bank to pay the Bank Expenses as and when invoiced to the Bank, to the extent funds are available.

I.      The extent, validity, perfection and enforceability of the Pre-Petition Obligations, Pre-Petition Liens, the Loan Documents, and the Bank's interest in the PrePetition Collateral, as of the Petition Date, are valid and binding agreements and obligations of the Debtor, the liens and security interests of the Bank in the Pre-Petition Collateral are valid, perfected, enforceable liens not subject to subordination and otherwise non-avoidable, and the Pre-Petition Obligations are allowable and are valid, enforceable and non-avoidable secured claims pursuant to Sections 506(a) and (b) of the Bankruptcy Code, in the amount set forth in the books and records of the Bank, and the Debtor does not possess, and may not assert, any claim, counterclaim, setoff defense, offset or recoupment of any kind or nature, unless a party in interest, within ninety (90) days of the date of this Interim Order, files a complaint, pursuant to Bankruptcy Rule 7001, to invalidate, avoid, modify, reduce or subordinate the Pre-Petition Obligations and the Bank's liens on the Pre-Petition Collateral and/or to object to the extent, validity, enforceability, or perfection of the Bank's Pre-Petition Liens, and the Court ultimately rules in favor of the party in interest on such complaint.

J.      No consent by the Bank to any administrative claims, including fees and expenses of professionals, sought to be assessed against or attributed to the Bank or its interests in the Collateral pursuant to the provisions of Section 506(c) of the Bankruptcy Code or otherwise by, through or on behalf of the Debtor shall be implied from any action, inaction or acquiescence by the Bank or otherwise. Except as set forth herein, the Bank has not consented or agreed to the use of the Cash Collateral, the Collateral, or their proceeds.

K.      If any payroll is paid from the Cash Collateral, the Debtor hereby expressly indemnifies and holds harmless the Bank from and against any liabilities, including costs and attorneys' fees, resulting from any claims or demands made by the United States government

7

pursuant to the provisions of the Federal Tax Lien Act of 1966 for withholding and FICA taxes incurred during the operation of the Debtor's business.

L.    Nothing in this Interim Order, including the Budget, shall constitute or be construed as a consent, acknowledgment or agreement by the Bank or constitute a waiver or estoppel with respect to the rights of the Bank to dispute the validity or accuracy of the Debtor's calculations or any contentions with respect to collateral values or adequate protection based thereon. The Bank shall not be deemed to be in control of the operations of the Debtor by virtue of the interests, rights, and remedies granted to or conferred upon the Bank under the Loan Documents, the Post-Petition Financing Documents, and/or this Interim Order.

M.    Representatives of the Bank may enter upon the premises of the Debtor at any time during the Debtor's business hours, upon reasonable notice to the Debtor and provided that such presence does not unduly interfere with the Debtor's operations. Such representatives shall have full access to the Debtor's books and records, as they are maintained, to verify the existence, condition, and location of property in which the Bank holds a security interest. Further, such representatives may observe the Debtor's compliance with the terms and provisions of this Interim Order, and the Loan Documents, but shall not in any respect participate in the management of the day-today business operations of the Debtor. The Debtor shall use its best efforts to accommodate the Bank with the observation permitted hereby.

N.    In addition, the Debtor shall provide to the Bank all reports and financial information required by the Loan Documents, and shall in good faith and in a reasonably prompt manner: (i) provide to the Bank the financial reports submitted to the United States Trustee's Office, and such other information as the Bank may from time to time request; (ii) answer inquiries and requests of the Bank and its professionals for information, and/or documentation; (iii) provide full cooperation and information to the Bank as to the value and description of the

8

assets of Debtor and the sale or liquidation of those assets; (iv) provide the Bank with weekly cash flow detail reports by Tuesday of the following week comparing actual performance to the Budget; (v) provide the Bank, on or before noon on May 24, 2008 an updated proposed budget, the terms of which are to be acceptable to the Bank in its sole discretion, showing the Debtor's detailed projections for the ensuing nine (9) week period; (vi) no later than April 29, 2008, the Debtor shall open a new account with the Bank (the "DIP Account"); and (vii) no other bank accounts are permitted, with all of Debtor's bank accounts to be closed and proceeds deposited into the DIP ACCOUNT by said date.

O.      The Debtor shall maintain and manage its business and operations in the ordinary course under the current circumstances, including without limitation the maintenance of adequate insurance coverage with respect to loss of or damage to the Collateral with the Bank named as a loss payee on all such policies. The Debtor shall make every reasonable effort to insure the collection of all pre-petition and post-petition accounts and to preserve, maintain and protect the Collateral and the proceeds thereof.

P.      The terms of this Interim Order will expire on the date (the "Termination Date") that is the earlier of: (i) the date first set for the Final Hearing; (ii) the entry of an order by any court modifying, amending, vacating or staying any provision of this Interim Order; (iii) the voluntary or involuntary dismissal of the Debtor's bankruptcy case; (iv) the appointment of a Chapter 11 Trustee or Examiner; (v) the conversion of this case to one under Chapter 7 of the Bankruptcy Code; (vi) the entry of an Order confirming a Chapter 11 Plan of Reorganization; (vii) the occurrence of an Event of Default as defined herein; or (vii) May 28, 2008.

Q.      Notwithstanding any other term or condition of this Interim Order, or the Loan Documents, as of the Termination Date, the Bank shall be under no obligation to permit the

9

Debtor to use any Cash Collateral unless, prior to the Termination Date, the Bank and the Debtor submit a supplemental agreed order governing such post-petition use of cash collateral, and such agreed order has been entered and approved by the Court. All of the liens and security interests granted to the Bank herein shall survive the Termination Date.

R.     The Debtor's right to use the Cash Collateral immediately shall terminate upon any of the following occurrences ("Events of Default"): (a) any failure by the Debtor to timely make any payment due to the Bank under this Interim Order; (b) the Debtor fails to timely provide any of the reports required by Paragraph N of this Interim Order, the Loan Documents, or as otherwise requested by the Bank; (c) the Debtor makes any material payment not set forth in the Budget or not previously approved by the Bank; (d) the Debtor sells or agrees to sell any of the Debtor's assets, other than sales of inventory made in the ordinary course of business, without the Bank's consent, or an appropriate order from this Court; (e) the Debtor shall fail to comply with any other term or condition of this Interim Order; or (f) five business days after the Bank files a Notice of Default with the Court stating that the Debtor has failed to comply with any term of this Order and directing Debtor to stop using the Cash Collateral. If the Bank files such Notice of Default, the Debtor may request an emergency hearing ("Request for Hearing") to seek continued use of the Cash Collateral on such terms and conditions as the Court determines. Debtor agrees not to seek a continuance of any hearing after scheduling by the Court.

S.     Upon the occurrence of an Event of Default, as defined above, the Bank shall have the right, provided the Debtor does not file a timely Request for Hearing, to exercise the rights granted to the Bank under this Interim Order and the Loan Documents, as to all or such part of the Collateral (for purposes of this Section, Collateral shall include any and all real estate owned by the Debtor of which Bank is a mortgagee) as the Bank in its sole discretion shall elect, including the right to take possession of and sell the Collateral in accordance with the terms of the Uniform Commercial Code as adopted by the State of Illinois to satisfy the Pre-Petition

10

Obligations, and all other rights and remedies at law and equity upon notice to the Debtor of the Bank's election and on expedited hearing to be conducted by this Court not less than three (3) business days from the date of such notice. For such purpose, the automatic stay of Section 362 of the Bankruptcy Code is hereby modified and vacated as against the Bank. Immediately following the occurrence of an Event of Default, provided the Debtor does not file a timely Request for Hearing, the Bank may sue any party to recover or collect the Collateral. In such event, the Bank may sue in the name of Debtor, and counsel for the Bank is hereby authorized to act as special counsel for the Debtor and the Bank, as their interests may appear, for the purpose of recovering or collecting the Collateral if the Debtor does not undertake to do so within ten (10) days after a written request from the Bank. Additionally, after an Event of Default, provided the Debtor does not file a timely Request for Hearing, the Bank may apply to this Court in the name of Debtor and on its own behalf, for an Order confirming the sale, lease or other disposition of the Collateral upon ten (10) days notice to parties entitled to notice.

T.    The Bank, in its sole discretion, shall have the right to forbear from pursuing or enforcing any of the rights, remedies or powers granted herein or in the Loan Documents. Delay in or failure to exercise any rights or remedies shall not constitute a waiver of any such rights, remedies or powers nor shall such forbearance subject the Bank to any liability to any other party, nor shall any other party rely upon or in any way seek to assert such delay or failure as a defense to any obligations owing to the Bank.

U.    Upon the occurrence of the Termination Date, the principal, accrued interest, professional fees and expenses incurred by the Bank, and all other amounts owed to the Bank under the Loan Documents shall be immediately due and payable and the Bank shall have all other rights and remedies provided in the Loan Documents and this Interim Order.

V.    In no event shall the Bank be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any of the Collateral or otherwise.

11

W.   Notwithstanding anything to the contrary herein, the entry of this Interim Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, or otherwise impair: (a) any of the rights of the Bank under the Bankruptcy Code or under non-bankruptcy law, including, without limitation, the right of the Bank to (i) request additional adequate protection of its interests in Collateral or relief from or modification of the automatic stay under § 362 of the Bankruptcy Code, (ii) request conversion of this Chapter 11 Case to Chapter 7, and (iii) propose, subject to the provisions of § 1121 of the Bankruptcy Code, a Chapter 11 plan or plans; or (b) any other rights, claims or privileges (whether legal, equitable or otherwise) of the Bank. Nothing in this Interim Order shall in any way affect the rights of the Bank against third parties. In taking any action reasonably related to the Loan Documents, or this Interim Order, the Bank shall have no liability to the Debtor or any third party.

X.   In the event any or all of the provisions of this Interim Order are hereafter modified, amended, stayed or vacated by a subsequent order of this or any other Court, no such modification, amendment, stay or vacation shall affect the validity and enforceability of any obligation, debt, lien, security interest or priority authorized or created hereby. Notwithstanding any such modification, amendment, stay or vacation, any claim granted to the Bank hereunder arising prior to the effective date of such modification, amendment, stay or vacation shall be governed in all respects by the original provisions of this Interim Order and the Bank shall be entitled to all of the rights, remedies, privileges and benefits, including the liens and priorities granted herein, with respect to any such claim.

Y.   The provisions of this Interim Order shall be binding upon and inure to the benefit of the parties hereto and their successors and assigns, and all other parties in interest in this bankruptcy case including but not limited to any Trustee or Examiner who may be appointed in this Chapter 11 case or any superceding case under Chapter 7 of the Bankruptcy Code.  The obligation of the Debtor with respect to the Pre-Petition Obligations shall not be modified or

12

discharged by the entry of an order confirming a plan of reorganization in this case, except as otherwise consented to by the Bank.

Z.   The terms and conditions contained in this Interim Order have been negotiated, agreed to, and the terms hereof promulgated in good faith and at arms length between the Debtor and the Bank, with all parties represented by counsel. This Interim Order and related documents represent good faith transactions that are in the best interests of the Debtor's estate. The security interests and liens and priorities granted under this Interim Order are entitled to the benefits and protections of the Bankruptcy Code.

AA.   All rights and remedies conferred herein and all waivers made hereby shall be binding upon all parties in interest including but not limited to all secured creditors and lienholders.

BB.   Time is of the essence to the parties' agreement to perform as set forth in this Interim Order.

CC.   This order is being entered as an interim order pending a final hearing and, at that time, the Court may continue, not continue, or may modify any provisions of this Order.

SO ORDERED.

AND IT IS FURTHER ORDERED and NOTICE IS HEREBY GIVEN that a final hearing on the Debtor's Emergency Motion for Order Granting Authority to Use Cash Collateral shall be held at _11:00_ o'clock a.m. on May _28_ 2008, in Room _1500_ United States Bankruptcy Court, Northern District of Illinois, Rockford Division, 211 South Court Street, Rockford, Illinois 61101. Any creditor or other interested party having any objection to the entry of a final order shall file a written objection with the United States Bankruptcy Court Clerk, United States Bankruptcy Court, Northern District of Illinois, Rockford Division, 211 South Court Street, Rockford, Illinois 61101 and serve it upon (i) counsel for the Debtor,

13

Rockford Packaging, Bradley T. Koch and Kim Casey of Holmstrom & Kennedy, PC, 800 N.

Church Street, P.O. Box 589, Rockford, IL  61105. (ii) counsel for Amcore Bank, Kurt M.

Carlson of Tishler and Wald, 200 South Wacker Drive, Suite 3000, Chicago, Il  60606, and (iii)

Office of the U.S. Trustee, Rockford, IL, no later than two days prior to the final hearing.

Dated:  April 23, 2008.

ENTERED:

U.S. Bankruptcy Judge

**Prepared By:**

Kurt M. Carlson
Tishler and Wald, Ltd.
200 South Wacker Drive
Suite 3000
Chicago, Il 60606
Tel:  312/876-3800
Fax: 312/876-3816
E-mail:  Kcarlson@tishlerandwald.com