UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

IN RE: ROCKFORD PACKAGING )
SYSTEMS, INC. d/b/a Rockford Midland )
Corporation )  No.08- 71195
      Debtor. )
                                                      ) Hon. Manuel Barbosa

**<u>FINAL ORDER (I) AUTHORIZING USE OF CERTAIN
CASH COLLATERAL AND
(II) GRANTING REPLACEMENT LIENS TO AMCORE BANK</u>**

This matter is before the Court on the Debtor's Motion for Final Order Granting Authority to Use Cash Collateral (the "Motion"), filed by the Debtor, Rockford Packaging, Inc (the "Debtor"). Notice of the Motion has been given by the Debtor to the United States Trustee, Amcore Bank (the "Bank"), and all creditors of the Debtor required to be noticed. At the Hearing on the Motion, no creditor objected, and the Court was advised that the Bank and the Debtor were finalizing the terms of a consensual cash collateral order. The Court, having conducted the initial hearing on and considering the Motion, and being duly advised in the premises, now finds the following:

**<u>Notice and Hearings Held</u>**

1. Adequate and sufficient notice of the Motion has been given in accordance with Rules 2002 and 4001 (d) of the Federal Rules of Bankruptcy Procedure, which notice is sufficient for all purposes under the Bankruptcy Code and the applicable Federal Rules of Bankruptcy Procedure in respect to the relief requested in the Motion.

2. On April 23, 2008, the Court conducted the Interim Hearing at which counsel for the Debtor, counsel for the Bank, and counsel for the U.S. Trustee were present. At the Interim Hearing, the represented parties informed the Court that an agreement concerning the Debtor's Interim use of cash collateral through and including May 27, 2008 had been reached, the terms of

1

which are incorporated in this Final Order. On May 28, 2008, the Court conducted the Hearing on Debtor's Motion for Final Hearing on use of cash collateral. The Debtor's use of cash collateral was allowed by an agreed Second Interim Order through June 30, 2008, with a status hearing set for June 18, 2008, which was stricken as moot based on the entry of the agreed Second Interim Order. The Final Hearing on the Debtor's Use of Cash Collateral was noticed pursuant to this Court's Order of May 28, 2008, and has now been conducted on June 25, 2008. No parties have objected to any of the Interim Orders, or the entry of the Final Order.

3. A creditors meeting has been held. No official creditors committee, as provided for under Section 1102 of the Bankruptcy Code, has been appointed as of the date hereof.

## Background

4. The Debtor filed its voluntary Chapter 11 petition on April 18, 2008 (the "Petition Date"), and is operating its business and managing its property as the debtor in-possession under 11 U.S.C. §§ 1107(a) and 1108. No trustee or examiner has been appointed in this Chapter 11 case.

5. As of the Petition Date, the Bank has and continues to have a first priority secured claim against the Debtor in the principal amount of not less than $773,180.61 (the "Pre-Petition Obligations"), by virtue of, among other things, a Promissory Note, dated February 21, 2003, by and between the Debtor and the Bank in the original principal amount of $380,000.00, loan number 45517-000-99; Promissory Note, dated May 5, 2005, by and between the Debtor and the Bank, in the original principal amount of $500,000.00, loan number 8205894; a Security Agreement from the Debtor to the Bank, dated January 7, 2003, securing all present and future debts of the Debtor to the Bank perfecting the Bank's security interest in all accounts and other rights to payment, inventory, instruments, chattel paper, general intangibles, documents, and deposit accounts of the Debtor (all of which are hereinafter referred to as the "Loan

2

Documents").

6. The Bank's Pre-Petition Obligations are secured by duly perfected first priority security interests and liens (the "Pre-Petition Liens") in substantially all of the Debtor's business assets, with priority over all liens, claims, and interests of all other persons and entities including the Debtor (the "Pre-Petition Collateral"); that the Pre-Petition Obligations constitute allowable claims under Sections 502 and 506 of the Bankruptcy Code; and the Pre-Petition Obligations are due and payable without defense, setoff, or counterclaim.

7. The proceeds of certain of the Pre-Petition Collateral constitute cash collateral as defined in Section 363(a) of the Bankruptcy Code (the "Cash Collateral"). As of the Petition Date, the Debtor had accounts receivable, furniture, fixtures, and equipment, inventory, and work in process, ~~all~~ proceeds of which constitute Cash Collateral within the meaning of 11 U.S.C. §363(c)(2).

8. This Order does not adjudicate the rights of the Internal Revenue Service, nor does it give the Bank greater rights to the Cash Collateral than the Bank would otherwise have respecting only those liens claimed in the Cash Collateral by the Internal Revenue Service. Nor does the Debtor or the Bank agree concerning the validity or amount of any claim of the Internal Revenue Service or that the claimed liens of the Internal Revenue Service are proper, valid or superior.

## The Motion

9. In the Motion, the Debtor seeks authorization to use Cash Collateral. The Debtor asserts that it requires the use of Cash Collateral in order to continue to operate its business. Without the use of Cash Collateral, the Debtor's estate will suffer irreparable harm in that the value of the Debtor's assets will diminish, and the Debtor will not be able to preserve the value of its assets. Accordingly, the Debtor has requested that the Bank allow them continued use of Cash

3

Collateral in the operation of its business.

10. The Debtor lacks unencumbered assets to operate its business post- petition.

11. The Debtor has prepared a weekly cash flow projection attached as Exhibit "A" (the "Budget") which shows the Debtor's anticipated use of cash collateral from the week beginning June 30, 2008 through the week ending August 31, 2008. Debtor's authority to use cash collateral is expressly conditioned upon the Debtor providing weekly cash flow projection budgets in form and substance acceptable to the Bank.

12. The Bank is willing to allow the Debtor to use Cash Collateral, subject to the agreed terms, conditions, and limitations set forth in this Final Order through August 31, 2008. It is in the best interest of the Debtor, the Debtor's estate, and its creditors for the Debtor to be allowed to use Cash Collateral of the Bank on the conditions set forth herein.

13. The covenants and agreements contained in the Loan Documents shall remain valid and enforceable and are incorporated herein by reference, except to the extent that they are inconsistent with the terms of this Final Order, in which event the terms of this Final Order shall control.

## Final Order and Findings of this Court

NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED as follows:

A. Subject to compliance with the conditions of this Final Order, the Debtor is hereby authorized to use the Pre-Petition Collateral, including the Cash Collateral, in conformity with the Budget. The Debtor shall be authorized to expend funds on those categories and for amounts not to exceed a fifteen percent (15%) variance from those identified in the Budget without further order of the Court; provided, however, that if the Bank, in its sole discretion, approves in writing any additional expenditure not included in the Budget, the Debtor may use the Cash

Collateral in accordance therewith without further order of the Court.

B.  In order to provide the Bank with adequate protection with respect to any decrease in the value of its interest in the Pre-Petition Collateral resulting from imposition of the automatic stay under Section 362 of the Bankruptcy Code or the use of such property, including Cash Collateral by the Debtor (such decrease in value being referred to as the "Adequate Protection Claim"), and to secure the Adequate Protection Claim, if and only to the extent it has a valid pre-petition lien on the Cash Collateral, the Bank is granted a security interest and lien (the "Replacement Lien") upon all of the Debtor's post-petition property and assets of any kind and nature and the proceeds thereof, which Replacement Lien is in addition to the Pre-Petition Liens (the Pre-Petition Collateral and the collateral for the Replacement Lien described above is hereafter collectively referred to as the "Collateral"). The Replacement Lien is granted nunc pro tunc to the Petition Date.

C.  Except as expressly set forth in this Final Order, the liens and security interests granted to the Bank in this Final Order shall not be subordinated to or paid pro rata with any other lien under § 364(d) of the Bankruptcy Code or otherwise.

D.  In the event that the protections provided by the liens, security interests and encumbrances herein created in favor of the Bank by any means turn out, in retrospect, to have been inadequate, the Bank is granted an administrative super-priority claim, pursuant to 11 U.S.C. §507(b), superior to all administrative expenses to satisfy its post-petition claim, subject to (i) post-petition employee wages and salaries as set forth in the Budget, and (ii) U.S. Trustee fees.

E.  The rights and obligations of the Debtor and the rights, claims, security interests, liens and priorities of the Bank arising under this Final Order and the Post-Petition Financing Documents (as hereinafter defined), if any, are in addition to, and not in lieu or substitution of,

5

the rights, obligations, claims, security interests, liens and priorities existing as of the Petition Date.

F.   The Debtor shall execute such notes, security agreements, and other documents as the Bank may request, to effectuate this Final Order, or to evidence, confirm, validate or perfect the liens, security interests, debts and obligations granted pursuant to this Final Order (Any and all such documents, along with any post-petition financing statements filed by the Bank, are hereafter referred to, collectively, as the "Post-Petition Financing Documents"). Nevertheless, the entry of this Final Order shall operate to evidence the Debtor's indebtedness to the Bank and perfect the Bank's security interests granted herein without the Bank's further act. If the Bank chooses to file financing statements or other documents or otherwise confirm perfection of its security interests granted herein, all such financing statements or other documents shall be deemed to have been filed or recorded as of the Petition Date. For purposes of this paragraph only, the automatic stay of § 362 of the Bankruptcy Code is hereby modified, vacated and lifted as against the Bank.

G.   In order to provide the Bank with adequate protection, the Debtor has been and shall continue to pay the Bank and amount equal to current principal and interest payments due for each month, commencing with the present month. Debtor shall continue to make payments equal to the amount of principal and interest payments, when and as due, thereafter. Any and all payments or proceeds remitted, or deemed to be remitted, to the Bank pursuant to the provisions of this Final Order shall be received, or deemed received, by the Bank for the benefit of the Bank free and clear of any claim, charge, assessment or other liability including, without limitation, any claim or charge arising out of or based on Sections 506(c) or 552(b) of the Bankruptcy Code, whether directly or indirectly, all of which are hereby waived by the Debtor. Bank shall apply said payments to the obligations of the Debtor in a manner the Bank deems appropriate.

H.    Consistent with the Loan Documents and in consideration of the Bank's consent to the Debtor's use of Cash Collateral, the Debtor shall timely pay or reimburse the Bank for all costs and expenses (including, without limitation, all filing and recording fees and reasonable attorneys' and paralegal fees and expenses) as and when incurred by the Bank before or after the Petition Date: (i) in connection with the filing of the bankruptcy, the Motion, the Final Order, and related instruments, documents and agreements including the perfection of the Bank's security interests; (ii) in the representation of the Bank in the Debtor's bankruptcy case including but not limited to those services and expenses incurred in connection with any adversary proceeding, contested matter, discovery, sale(s) of assets, plan of reorganization, or otherwise; (iii) in the monitoring of all loans by the Bank to the Debtor; (iv) in enforcing the Bank's rights and remedies with respect to the Collateral; and (v) in paying any cost or expense for which the Debtor would otherwise be obligated to the Bank under the Loan Documents ("Bank Expenses"). The Bank may debit any bank account of the Debtor with the Bank to pay the Bank Expenses as and when invoiced to the Bank, to the extent funds are available, *and subject to approval of the Bankruptcy Court, without necessity of a fee petition.*

I.    As previously found by this Court, and found again by this Order, the extent, validity, perfection and enforceability of the Pre-Petition Obligations, Pre-Petition Liens, the Loan Documents, and the Bank's interest in the PrePetition Collateral, as of the Petition Date, are valid and binding agreements and obligations of the Debtor, the liens and security interests of the Bank in the Pre-Petition Collateral are valid, perfected, enforceable liens not subject to subordination and otherwise non-avoidable, and the Pre-Petition Obligations are allowable and are valid, enforceable and non-avoidable secured claims pursuant to Sections 506(a) and (b) of the Bankruptcy Code, in the amount set forth in the books and records of the Bank, and the Debtor does not possess, and may not assert, any claim, counterclaim, setoff defense, offset or recoupment of any kind or nature.

J.    No consent by the Bank to any administrative claims, including fees and expenses

7

of professionals, sought to be assessed against or attributed to the Bank or its interests in the Collateral pursuant to the provisions of Section 506(c) of the Bankruptcy Code or otherwise by, through or on behalf of the Debtor shall be implied from any action, inaction or acquiescence by the Bank or otherwise. Except as set forth herein, the Bank has not consented or agreed to the use of the Cash Collateral, the Collateral, or their proceeds.

K.    If any payroll is paid from the Cash Collateral, the Debtor hereby expressly indemnifies and holds harmless the Bank from and against any liabilities, including costs and attorneys' fees, resulting from any claims or demands made by the United States government pursuant to the provisions of the Federal Tax Lien Act of 1966 for withholding and FICA taxes incurred during the operation of the Debtor's business.

L.    Nothing in this Final Order, including the Budget, shall constitute or be construed as a consent, acknowledgment or agreement by the Bank or constitute a waiver or estoppel with respect to the rights of the Bank to dispute the validity or accuracy of the Debtor's calculations or any contentions with respect to collateral values or adequate protection based thereon. The Bank shall not be deemed to be in control of the operations of the Debtor by virtue of the interests, rights, and remedies granted to or conferred upon the Bank under the Loan Documents, the Post-Petition Financing Documents, and/or this Final Order.

M.    Representatives of the Bank may enter upon the premises of the Debtor at any time during the Debtor's business hours, upon reasonable notice to the Debtor and provided that such presence does not unduly interfere with the Debtor's operations. Such representatives shall have full access to the Debtor's books and records, as they are maintained, to verify the existence, condition, and location of property in which the Bank holds a security interest. Further, such representatives may observe the Debtor's compliance with the terms and provisions of this Final Order, and the Loan Documents, but shall not in any respect participate in the management of the

day-today business operations of the Debtor. The Debtor shall use its best efforts to accommodate the Bank with the observation permitted hereby.

N. In addition, the Debtor shall provide to the Bank all reports and financial information required by the Loan Documents, and shall in good faith and in a reasonably prompt manner: (i) provide to the Bank the financial reports submitted to the United States Trustee's Office, and such other information as the Bank may from time to time request; (ii) answer inquiries and requests of the Bank and its professionals for information, and/or documentation; (iii) provide full cooperation and information to the Bank as to the value and description of the assets of Debtor and the sale or liquidation of those assets; (iv) provide the Bank with weekly cash flow detail reports by Tuesday of the following week comparing actual performance to the Budget, the terms of which are to be acceptable to the Bank in its sole discretion.

O. The Debtor shall maintain and manage its business and operations in the ordinary course under the current circumstances, including without limitation the maintenance of adequate insurance coverage with respect to loss of or damage to the Collateral with the Bank named as a loss payee on all such policies. The Debtor shall make every reasonable effort to insure the collection of all pre-petition and post-petition accounts and to preserve, maintain and protect the Collateral and the proceeds thereof.

P. The terms of this Final Order will expire on the date (the "Termination Date") that is the earlier of: (i) the entry of an order by any court modifying, amending, vacating or staying any provision of this Final Order; (ii) the voluntary or involuntary dismissal of the Debtor's bankruptcy case; (iii) the appointment of a Chapter 11 Trustee or Examiner; (iv) the conversion of this case to one under Chapter 7 of the Bankruptcy Code; (v) the entry of an Order confirming a Chapter 11 Plan of Reorganization; (vi) the occurrence of an Event of Default as defined

9

[handwritten annotation: (4) the facts Matter of intent on the sale of Debtors' i) real estate, ii) business, iii) one or more product lines by July 31, 2008.]

herein; or (vii) August 31, 2008.

Q. Notwithstanding any other term or condition of this Final Order, or the Loan Documents, as of the Termination Date, the Bank shall be under no obligation to permit the Debtor to use any Cash Collateral unless, prior to the Termination Date, the Bank and the Debtor submit a supplemental agreed order governing such post-petition use of cash collateral, and such agreed order has been entered and approved by the Court. All of the liens, bars, estoppels and security interests granted to the Bank herein shall survive the Termination Date.

R. The Debtor's right to use the Cash Collateral immediately shall terminate upon any of the following occurrences ("Events of Default"): (a) any failure by the Debtor to timely make any payment due to the Bank under this Final Order; (b) the Debtor fails to timely provide any of the reports required by Paragraph N of this Final Order, the Loan Documents, or as otherwise requested by the Bank; (c) the Debtor makes any material payment not set forth in the Budget or not previously approved by the Bank; (d) the Debtor sells or agrees to sell any of the Debtor's assets, other than sales of inventory made in the ordinary course of business, without the Bank's consent, or an appropriate order from this Court; (e) the Debtor shall fail to comply with any other term or condition of this Final Order; (f) the Debtor fails to produce a fully executed, and accepted, offer to purchase the commercial real estate commonly known as 1715 Northrock Court, Rockford, Illinois by August 31, 2008 [handwritten: (A)] or [handwritten: (B)] five business days after the Bank files a Notice of Default with the Court stating that the Debtor has failed to comply with any term of this Order and directing Debtor to stop using the Cash Collateral. If the Bank files such Notice of Default, the Debtor may request an emergency hearing ("Request for Hearing") to seek continued use of the Cash Collateral on such terms and conditions as the Court determines. Debtor agrees not to seek a continuance of any hearing after scheduling by the Court.

S. Upon the occurrence of an Event of Default, as defined above, the Bank shall have the right, provided the Debtor does not file a timely Request for Hearing, to exercise the

10

rights granted to the Bank under this Final Order and the Loan Documents, as to all or such part of the Collateral (for purposes of this Section, Collateral shall include any and all real estate owned by the Debtor of which Bank is a mortgagee) as the Bank in its sole discretion shall elect, including the right to take possession of and sell the Collateral in accordance with the terms of the Uniform Commercial Code as adopted by the State of Illinois to satisfy the Pre-Petition Obligations, and all other rights and remedies at law and equity upon notice to the Debtor of the Bank's election and on expedited hearing to be conducted by this Court not less than three (3) business days from the date of such notice. For such purpose, the automatic stay of Section 362 of the Bankruptcy Code is hereby modified and vacated as against the Bank. Immediately following the occurrence of an Event of Default, provided the Debtor does not file a timely Request for Hearing, the Bank may sue any party to recover or collect the Collateral. In such event, the Bank may sue in the name of Debtor, and counsel for the Bank is hereby authorized to act as special counsel for the Debtor and the Bank, as their interests may appear, for the purpose of recovering or collecting the Collateral if the Debtor does not undertake to do so within ten (10) days after a written request from the Bank. Additionally, after an Event of Default, provided the Debtor does not file a timely Request for Hearing, the Bank may apply to this Court in the name of Debtor and on its own behalf, for an Order confirming the sale, lease or other disposition of the Collateral upon ten (10) days notice to parties entitled to notice.

    T.    The Bank, in its sole discretion, shall have the right to forbear from pursuing or enforcing any of the rights, remedies or powers granted herein or in the Loan Documents. Delay in or failure to exercise any rights or remedies shall not constitute a waiver of any such rights, remedies or powers nor shall such forbearance subject the Bank to any liability to any other party, nor shall any other party rely upon or in any way seek to assert such delay or failure as a defense to any obligations owing to the Bank.

    U.    Upon the occurrence of the Termination Date, the principal, accrued interest,

professional fees and expenses incurred by the Bank, and all other amounts owed to the Bank under the Loan Documents shall be immediately due and payable and the Bank shall have all other rights and remedies provided in the Loan Documents and this Final Order.

V. In no event shall the Bank be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any of the Collateral or otherwise.

W. Notwithstanding anything to the contrary herein, the entry of this Final Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, or otherwise impair: (a) any of the rights of the Bank under the Bankruptcy Code or under non-bankruptcy law, including, without limitation, the right of the Bank to (i) request additional adequate protection of its interests in Collateral or relief from or modification of the automatic stay under § 362 of the Bankruptcy Code, (ii) request conversion of this Chapter 11 Case to Chapter 7, and (iii) propose, subject to the provisions of § 1121 of the Bankruptcy Code, a Chapter 11 plan or plans; or (b) any other rights, claims or privileges (whether legal, equitable or otherwise) of the Bank. Nothing in this Final Order shall in any way affect the rights of the Bank against third parties. In taking any action reasonably related to the Loan Documents, or this Final Order, the Bank shall have no liability to the Debtor or any third party.

X. In the event any or all of the provisions of this Final Order are hereafter modified, amended, stayed or vacated by a subsequent order of this or any other Court, no such modification, amendment, stay or vacation shall affect the validity and enforceability of any obligation, debt, lien, security interest or priority authorized or created hereby. Notwithstanding any such modification, amendment, stay or vacation, any claim granted to the Bank hereunder arising prior to the effective date of such modification, amendment, stay or vacation shall be governed in all respects by the original provisions of this Final Order and the Bank shall be entitled to all of the rights, remedies, privileges and benefits, including the liens and priorities granted herein, with respect to any such claim.

Y.  The provisions of this Final Order shall be binding upon and inure to the benefit of the parties hereto and their successors and assigns, and all other parties in interest in this bankruptcy case including but not limited to any Trustee or Examiner who may be appointed in this Chapter 11 case or any superceding case under Chapter 7 of the Bankruptcy Code. The obligation of the Debtor with respect to the Pre-Petition Obligations shall not be modified or discharged by the entry of an order confirming a plan of reorganization in this case, except as otherwise consented to by the Bank.

Z.  The terms and conditions contained in this Final Order have been negotiated, agreed to, and the terms hereof promulgated in good faith and at arms length between the Debtor and the Bank, with all parties represented by counsel. This Final Order and related documents represent good faith transactions that are in the best interests of the Debtor's estate. The security interests and liens and priorities granted under this Final Order are entitled to the benefits and protections of the Bankruptcy Code.

AA.  All rights and remedies conferred herein and all waivers made hereby shall be binding upon all parties in interest including but not limited to all secured creditors and lienholders.

BB.  Time is of the essence to the parties' agreement to perform as set forth in this Final Order.

CC.  This order is being entered as a Final order pending a final hearing and, at that time, the Court may continue, not continue, or may modify any provisions of this Order.

DD.  This Order does not adjudicate the rights of the Internal Revenue Service, nor does it give the Bank greater rights to the Cash Collateral than the Bank would otherwise have respecting only those liens claimed in the Cash Collateral by the Internal Revenue Service. Nor does the Debtor or the Bank agree concerning the validity or amount of any claim of the Internal

Revenue Service or that the claimed liens of the Internal Revenue Service are proper, valid or superior.

AND IT IS FURTHER ORDERED that as no objections have been made to the finality of the cash collateral order, as set forth in the Debtor's Motion, and the hearing on the Debtor's Motion having been held, without objection, that the hearing on Debtor's Motion is concluded by the final findings contained in this Final Order on Debtor's Use of Cash Collateral.

SO ORDERED.

Dated: June 25, 2008.

ENTERED:

_____
U.S. Bankruptcy Judge

**Prepared By:**

Kurt M. Carlson
Tishler and Wald, Ltd.
200 South Wacker Drive
Suite 3000
Chicago, Il 60606
Tel: 312/876-3800
Fax: 312/876-3816
E-mail: Kcarlson@tishlerandwald.com

**Rockford Packaging Systems, Inc.**
Cash Budget
Projected 8-30-08
Updated 6-24-08

| Week Ending Saturday | Week 8 21-Jun | Week 9 28-Jun | Week 10 5-Jul | Week 11 12-Jul | Week 12 19-Jul | Week 13 26-Jul | Week 14 2-Aug | Week 15 9-Aug | Week 16 16-Aug | Week 17 23-Aug | Week 18 30-Aug | Total Post Petition |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| BEGINNING CASH BALANCE | 1,091 | 65,131 | 39,528 | 128,344 | 114,325 | 174,891 | 166,057 | 223,582 | 238,657 | 229,084 | 223,189 | |
| Net Collections | 106,870 | 6,640 | 50,576 | 4,800 | 78,812 | 5,000 | 75,000 | 25,200 | 15,000 | 5,000 | 15,000 | 440,248 |
| Other Receipts | 1,500 | 1,500 | 75,000 | 3,500 | 3,500 | 3,500 | 3,500 | 3,500 | 3,500 | 3,500 | 3,500 | -107,630 |
| CASH AVAILABLE FOR OPERATIONS | 107,961 | 73,271 | 165,104 | 137,144 | 196,437 | 183,391 | 244,557 | 252,082 | 257,157 | 236,584 | 241,689 | 241,689 |
| CASH OUTFLOWS | | | | | | | | | | | | |
| Payroll Related Expenses | | | | | | | | | | | | |
| Payroll (Gross) | 11,325 | 3,547 | 10,500 | 3,547 | 10,500 | 2,200 | 10,500 | 2,250 | 10,500 | 2,200 | 10,500 | 106,890 |
| Payroll Processing | | | | | | | | | | | | |
| Health/Dental/Life Insurance | 1,186 | 10,470 | | 2,435 | | 509 | | | 2,495 | | 509 | 17,971 |
| Expense Reports | | | | | | | | | | | | |
| Other | | 250 | | | | | | | | | | 250 |
| Total Payroll Related | 12,511 | 14,267 | 10,500 | 6,043 | 10,500 | 2,709 | 10,500 | 2,200 | 12,996 | 2,200 | 11,008 | 124,911 |
| Material and Factory | | | | | | | | | | | | |
| Material and Factory | 1,514 | 5,000 | 5,200 | 5,000 | 5,050 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,200 | 54,313 |
| Vehicle Parts Purchases | 3,162 | 5,000 | 5,300 | 3,000 | 3,050 | 3,000 | 3,000 | 5,000 | 3,000 | 3,000 | 3,100 | 45,687 |
| Outside Services | 1,250 | 1,250 | 1,250 | 1,250 | 1,250 | 1,250 | 1,250 | | | | | 8,750 |
| Consumables/Factory Supplies | 1,151 | 800 | 900 | 800 | 800 | 810 | 830 | 800 | 800 | 800 | 800 | 13,037 |
| Shipping Related | 107 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 4,256 |
| Other Miscellaneous | 124 | | | | | | | | | | | 124 |
| Total Material and Factory | 6,827 | 12,300 | 12,300 | 10,300 | 10,300 | 12,300 | 10,300 | 11,050 | 9,050 | 9,050 | 9,050 | 123,180 |
| Payments to Lenders | | | | | | | | | | | | |
| Prime Bank | 6,351 | 6,351 | | 6,301 | | | | | 6,301 | | | 33,204 |
| Utility (Bank Fees) | | 230 | | | | 200 | | | | 200 | 200 | 639 |
| Total Payments to Lenders | 6,301 | 6,501 | | 6,301 | | 200 | | 6,301 | | 200 | 34,063 |
| Commissions Sales | | 9,000 | 4,500 | 4,500 | 4,200 | | | | | | | 22,200 |
| Other Expenses | | | | | | | | | | | | |
| Property Tax | 1,325 | | 13,185 | | | 1,600 | | | | 1,600 | | 13,185 5,884 |
| Utilities | | | | | | | | | | | | |
| Warranty and Installation | | | | | | | | | | | | |
| Phone/Internet/Mobile | 468 | 250 | | | 468 | 250 | | | 426 | 255 | | 2,537 |
| P&C, WC and Umbrella | | | | | | | | | | | | 4,569 |
| Uniforms | | | | | 103 | | 50 | | 133 | | | 309 |
| Waste Hauling | 103 | | | | | | | | | | | |
| Office Supplies | | 200 | 50 | 50 | 50 | 50 | 50 | 50 | 50 | 50 | 50 | 1,552 |
| Outside Computer Services | | 100 | 100 | | | 100 | | | | | | 400 |
| Other Miscellaneous | 294 | 125 | 125 | 125 | 125 | 125 | 125 | 125 | 125 | 125 | 125 | 1,904 |
| Total Operating Expenses | 2,190 | 675 | 13,460 | 175 | 746 | 2,125 | 175 | 175 | 746 | 2,125 | 175 | 30,000 |
| Professional Fees | 15,000 | | | | | | | | | | | 15,000 |
| Total Cash Outflow | 42,829 | 33,743 | 36,260 | 22,819 | 21,546 | 17,334 | 20,975 | 13,425 | 28,093 | 13,375 | 20,434 | 327,184 |
| ENDING CASH BALANCE | 65,131 | 39,528 | 128,844 | 114,325 | 174,891 | 166,057 | 223,582 | 238,657 | 229,064 | 223,189 | 221,255 | 221,255 |
| AR BEGINNING BALANCE | 228,797 | 200,056 | 268,419 | 223,343 | 243,543 | 179,931 | 180,431 | 238,657 | 170,431 | 160,831 | 170,831 | 442,345 |
| Collections | 106,872 | 6,842 | 50,578 | 4,820 | 78,612 | 5,000 | 75,000 | 25,000 | 15,000 | 15,000 | 15,000 | 533,036 |
| Billing | 78,132 | 75,000 | 5,500 | 25,000 | 15,500 | 5,500 | 15,000 | 15,000 | 5,500 | 15,000 | 5,500 | 161,431 |
| AR ENDING CASH BALANCE | 200,059 | 268,419 | 223,543 | 243,545 | 179,931 | 180,431 | 180,431 | 175,431 | 160,931 | 170,831 | 161,431 | 161,431 |